**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:19-CR-00764-JAR ) |
| **KEOMBRA AURAY JAMES,** | ) ) ) |
| Defendant. | ) |

## GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1.  PARTIES:**

The parties are the defendant Keombra Auray James, represented by defense counsel Craig J. Concannon, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2.  GUILTY PLEA:**

**A.  The Plea:** Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Count One of the Indictment, the United States agrees to move for the dismissal as to Defendant of Counts Two and Three at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment.

**B.** **The Sentence:** The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. The parties further agree that notice of any such request will be given no later than ten (10) days prior to sentencing and that said notice shall specify the legal and factual bases for the request.   The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

**3.** **ELEMENTS:**

As to Count One, Defendant admits to knowingly violating Title 18, United States Code, Section 2119(3), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

- **(i)** Defendant, acting with another, attempted to take a 2013 Ford Escape, vehicle identification number ("VIN") 1FMCU0J98DUB25210, from the presence of another;
- **(ii)** Defendant, acting with another, did so by means of force and violence or intimidation;
- **(iii)** The 2013 Ford Escape had been transported in interstate commerce;
- **(iv)** At or during the time Defendant attempted to take the 2013 Ford Escape, acting with another, she intended to cause death or serious bodily injury; and
- **(v)** The death of a person resulted from attempting to take the 2013 Ford Escape.

4.     **FACTS:**

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On March 18, 2019, Codefendants Demario Hunter and Surrayah Hill drove in Hill's vehicle from the Southern District of Illinois to the Eastern District of Missouri. Once there, they recruited Hill's cousin, Defendant Keombra James, to participate in a robbery with them. They picked up James from her apartment in southern St. Louis City. The three defendants then drove, in Hill's vehicle, to Cherokee Street in St. Louis, a spot known for bars and restaurants where the defendants knew they would find robbery targets. Hill was driving the vehicle. Hunter openly possessed a firearm as they drove. Hill and James knew that Hunter was armed with a firearm. All three operated under a common purpose to commit one or more robberies. They arrived at Cherokee Street at approximately 9:00 in the evening. Location information from Hunter's cellular phone and from Hill's vehicle corroborate that Hunter and Hill were present there. Security camera footage from Cherokee Street shows Hill's vehicle drove through the area.

At 9:05 p.m., the defendants were driving past a parking lot behind a building on the southeast corner of Cherokee Street and Iowa Avenue. As the defendants passed the parking lot, James Anthony Sapone and A.S. were heading towards their vehicle and pressed the remote start button on their keys. When Sapone's vehicle remotely started, its headlights and brake lights illuminated. Seeing the lights illuminate, the defendants pulled into the parking lot and hid their vehicle behind an abandoned building. Hill remained in the driver's seat, but Hunter exited Hill's vehicle and approached Sapone and A.S. as Sapone opened the door for A.S. to enter their vehicle. Hunter racked the slide on his firearm to chamber a round of ammunition as he approached.

Immediately after he racked the slide, A.S. saw him and screamed. Hunter then made a verbal demand for the car.

Meanwhile, when Hunter left Hill's vehicle, James initially remained in the vehicle with Hill. Hill told James that she better get out of the vehicle and help Hunter. Hill remained in the vehicle. James exited Hill's vehicle and calmly approached Sapone's vehicle. When she arrived at the vehicle, A.S. was seated in the front passenger seat, and Hunter had Sapone held at gun point near the front passenger door. James, rather than approach Hunter, A.S., or Sapone, calmly walked to the driver door of Sapone's vehicle.

As James was approaching Sapone's vehicle, Sapone began to fight Hunter. Hunter had a grip on Sapone's clothing, and tried to keep Sapone from getting close enough for Sapone to punch Hunter. Sapone repeatedly grabbed at and swung towards Hunter's face. After a few seconds of Hunter and Sapone struggling with each other, Hunter shot his handgun once, striking Sapone in the torso. Sapone immediately lost consciousness and fell to the ground.

James, who had been getting into the driver's seat while Hunter fought Sapone, was confronted by A.S., who tried to keep James from entering the vehicle. She momentarily walked away from the driver's door and went to the back of the vehicle to check on Hunter and Sapone's fight. Upon hearing the gunshot and seeing Sapone fall to the ground, James returned to the driver's door. She was unable to get into the vehicle, however, because A.S.—fleeing from Hunter and the sound of the gunshot—climbed from the front passenger seat into the driver seat and confronted James at the driver's door. She chased James away from the vehicle and threw items at James as James tried to approach the vehicle again. Meanwhile, Hunter quickly checked Sapone's pockets, while looking back and forth between Sapone's vehicle and where Hill's vehicle was still waiting. He then ran off towards Hill's vehicle. In response to A.S. fighting her off,

James also ran back to Hill's vehicle. Hill drove her vehicle from the scene once Hunter and James returned to it. As James ran away, A.S. yelled for help, repeatedly called out to Sapone, and yelled at James, "I'll never forget you."

A.S. later picked James out of a lineup, identifying James as the woman who took part in the attempted carjacking. Additionally, James's handprint was recovered from the exterior of Sapone's vehicle, on the driver's side and immediately next to the driver's door.

Sapone was transported to a hospital where he was pronounced deceased upon arrival. His death was caused by the injuries sustained when Hunter shot him in the torso. A.S. and Sapone had been dating and were planning to get married.

Sapone's vehicle was a 2013 Ford Escape, with VIN 1FMCU0J98DUB25210. Sapone's vehicle was manufactured by Ford Motor Company in Louisville, Kentucky, and therefore the vehicle was transported in interstate commerce prior to the attempted carjacking. Hunter possessed and brandished the handgun during the attempted carjacking in order to intimidate his victims and to cause them fear. The handgun used during the robbery is a firearm as defined under federal law. Hunter possessed and brandished the firearm because he was willing to use deadly force in order to overcome resistance to the robbery. He in fact used deadly force, and caused the death of Sapone, when Sapone resisted the robbery. James and Hill knew Hunter was armed with a firearm. James and Hill knew Hunter was attempting to rob Sapone of his property and vehicle.

5.   **STATUTORY PENALTIES:**

Defendant fully understands that the maximum possible penalty provided by law for the crime to which Defendant is pleading guilty is imprisonment of any number of years up to life, a

fine of not more than $250,000, or both such imprisonment and fine, or be sentenced to death.[1]

The Court shall also impose a period of supervised release of not more than five years.

6.   **U.S. SENTENCING GUIDELINES: 2018 MANUAL**

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

   A.   **Chapter 2 Offense Conduct:**

      i.   **Base Offense Level:**   The parties agree that the Base Offense Level is 43, as found in Section 2A1.1, after application of the cross reference of Section 2B3.1(c)(1).

      ii.   **Specific Offense Characteristics:**   The parties agree that the following Specific Offense Characteristics apply: none known at this time.

   B.   **Chapter 3 Adjustments:**

      i.   **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and if Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

---

[1] On March 4, 2020, the United States filed a Notice with the Court stating that the Government does not intend to seek the death penalty as to Defendant.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1.  The parties further agree that Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1.  In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**C.** **Estimated Total Offense Level:**   The parties agree that the Total Offense Level for Count One is 40, unless defendant is a Career Offender.   Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1.  If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.   Defendant has discussed these possibilities with defense counsel.   Both parties reserve the right to argue that Defendant is or is not a Career Offender.

**D.** **Criminal History:**   The determination of Defendant's Criminal History Category shall be left to the Court.   Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category.   Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

  **E.** **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein, but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7.** **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

  **A.** **Appeal:** Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

   **i.** **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

   **ii.** **Sentencing Issues:** In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences Defendant within or below that range, then, as part of this agreement, Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences Defendant within or above the determined Sentencing Guidelines range.

  **B.** **Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States

Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    C.    **Right to Records:**   Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.**    **OTHER:**

    A.    **Disclosures Required by the United States Probation Office:**   Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

    B.    **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**   Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant.

    C.    **Supervised Release:**   Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime Defendant committed.   These conditions will be restrictions on Defendant to which Defendant will be required to adhere.   Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.   Defendant understands that parole has been abolished.

  **D.** **Mandatory Special Assessment:** This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  **E.** **Possibility of Detention:** Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

  **F.** **Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration, and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately.

  **G.** **Forfeiture:** Defendant agrees to forfeit all of Defendant's interest in all items seized by law-enforcement officials during the course of their investigation. Defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of Defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the United States and to rebut the claims of nominees and/or alleged third party owners. Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

**9.** **ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS:**

  In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to

require the United States to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.   Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel.   Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the United States' case and any defenses.

10.     **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case.   In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

**11.   CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement that deal with charges the United States agrees to dismiss or not to bring.

| | |
|---|---|
| 10/13/2021<br>Date | *Jason S. Dunkel*<br>Jason S. Dunkel<br>Assistant United States Attorney |
| 10-3-21<br>Date | *[signature]*<br>Keombra Auray James<br>Defendant |
| 10-3-21<br>Date | *[signature]*<br>Craig J. Concannon<br>Attorney for Defendant |